UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID AARON JACOBS,

    Plaintiff,

v.   Case No: 5:20-cv-231-Oc-39PRL

J.M. HENGER, WARDEN, et al.,

    Defendants.

_____

**ORDER OF DISMISSAL WITHOUT PREJUDICE**

Plaintiff, David Aaron Jacobs, a federal inmate proceeding pro se, initiated this action on May 20, 2020, under the "mailbox rule," by filing a Bivens[1] complaint against the Federal Bureau of Prisons and two Wardens in their official capacities (Doc. 1). Plaintiff seeks to proceed as a pauper (Doc. 2). Finding his complaint deficient, the Court directed Plaintiff to submit an amended complaint, see Order (Doc. 5), which Plaintiff has done. Plaintiff's amended complaint (Doc. 6; Am. Compl.) is now before the Court for initial screening under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(e)(2)(B) (requiring a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted).

---

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

In his amended complaint, Plaintiff names three Defendants: Warden J.M. Henger, Associate/Acting Warden C. Rijos, and Officer Munn. See Am. Compl. at 2-3. He alleges Defendants were deliberately indifferent to his serious medical needs beginning on March 10, 2020. Id. at 3-4. According to Plaintiff, the prison's COVID-19 lockdown procedures prevented him from obtaining regular, non-emergent blood pressure checks for his chronic severe hypertension, landing him in the hospital with "cardiac events" at least five times between March 10 and May 31, 2020. Id. at 13-14, 16, 18, 20, 22.[2] Plaintiff asserts that each time he returns from the hospital, per prison policy, he is required to spend fourteen days in a quarantine unit, which further "endanger[s] [his] life and health because of the . . . difficulty in obtaining medical help while in isolation." Id. at 15, 19.

Plaintiff also alleges he has difficulty summoning immediate help when he experiences chest pains because the medical distress buttons inside all cells do not work. Id. at 15, 19. As an example, Plaintiff says that on April 25, 2020, he waited forty minutes before a staff member, Defendant Munn, recognized his emergency and arranged for his transport to the medical department. Id. at

---

[2] Notably, the last hospitalization, on May 31, 2020, occurred after Plaintiff filed his original complaint on May 20, 2020.

16.³ Plaintiff asserts that all staff know the medical distress buttons have been inoperable for two years. Id. at 17.

### Exhaustion Under the PLRA

The PLRA provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones v. Bock, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford v. Ngo, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). The Supreme Court has held "the PLRA . . . requires proper exhaustion," which means a prisoner must grieve his issues in compliance with the agency's procedural rules, so the agency has a "full and fair opportunity" to address a prisoner's issues on the merits. Woodford, 548 U.S. at 90, 93.

"[F]ederal prisoners suing under Bivens . . . must first exhaust inmate grievance procedures just as state prisoners" suing

---

³ The April 25th incident did not require a trip to the hospital, though, after experiencing chest pains again two days later, Plaintiff was sent to the hospital, where he was diagnosed with having suffered a "non-stem" heart attack. Am. Compl. at 16-17.

3

under § 1983 must do. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also O'Brien v. Seay, 263 F. App'x 5, 8 (11th Cir. 2008) (recognizing the PLRA exhaustion requirement applies to Bivens claims). To properly exhaust administrative remedies, a federal prisoner must complete a multi-tiered system as set forth in the Bureau of Prison's (BOP's) Administrative Remedy Program (ARP). See 28 C.F.R. §§ 542.13-542.18; Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) (citing Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998)) (explaining the process to exhaust administrative remedies within the BOP).

First, except as to "sensitive issues," a prisoner must attempt an "informal resolution" by timely submitting form BP-8 to prison staff. See 28 C.F.R. § 542.13(a), (b); O'Brien, 263 F. App'x at 8. Second, a prisoner must seek relief from the Warden by timely submitting an Administrative Remedy Request using form BP-9. 28 C.F.R. § 542.14(a); O'Brien, 263 F. App'x at 8. Third, if an inmate is unsatisfied with the Warden's response, he must timely submit an Appeal to the Regional Director on form BP-10. 28 C.F.R. § 542.15(a); O'Brien, 263 F. App'x at 8. Finally, to complete the appeal process, a prisoner must timely submit an Appeal to the General Counsel on form BP-11. 28 C.F.R. § 542.15(a); O'Brien, 263 F. App'x at 8.

Section 542.18 prescribes response times at each level of the process: 20 days for the Warden; 30 days for the Regional Director;

and 40 days for General Counsel. 28 C.F.R. § 542.18. Response times may be extended upon written notice to the prisoner. Id. Because of the multi-tiered BOP exhaustion process, "[c]omplete exhaustion . . . may take over five months . . . ." Forde v. Miami Fed. Dep't of Corr., 730 F. App'x 794, 798 (11th Cir. 2018).

Prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." See Jones, 549 U.S. at 216. Nevertheless, when a prisoner's failure to exhaust his administrative remedies is apparent on the face of the complaint, a district court may dismiss the complaint under the PLRA for the prisoner's failure to state a claim. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint.").

As is evident on the face of Plaintiff's amended complaint, he has failed to exhaust his administrative remedies. In his amended complaint, Plaintiff explains his exhaustion efforts. See Am. Compl. at 31-32. He claims he lodged two complaints, only one of which pertains to his alleged deliberate indifference claim. Id. at 31.[4] Plaintiff says he initiated the grievance process on April 19, 2020, at the institution level. Id. at 31-32. He appealed

---

[4] Plaintiff also grieved the denial of his request to be released to home confinement under 18 U.S.C. § 3582(c)(1)(A) (compassionate release). See Am. Compl. at 21, 31.

5

the decision to the office of the Regional Director. Id. at 32. Plaintiff does not specify the date on which he submitted his appeal, but he says the office of the Regional Director had until June 8, 2020, to respond. Id. Plaintiff filed his original complaint on May 20, 2020 (Doc. 1), before he received a response to his appeal and before the response time had even expired. Thus, accepting Plaintiff's allegations as true, he did not exhaust his administrative remedies before pursuing judicial relief. See, e.g., Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (recognizing an inmate fails to properly exhaust his administrative remedies when he initiates his lawsuit before receiving a response or waiting for the response time to expire); Okpala, 248 F. App'x at 73 (holding the district court properly dismissed the plaintiff's complaint under 28 U.S.C. § 1915A because it was clear "from the face of the complaint" that the prisoner did not await a response to his last grievance before initiating his Bivens action).

Plaintiff asks the Court to excuse his failure to exhaust by suggesting he did not receive a timely response to his grievance or appeal (he does not specify which one) and stating the grievance process is not "capable of addressing [his] claims." Am. Compl. at 33. Even if the office of the Regional Director never responded to Plaintiff's appeal or did not timely respond, Plaintiff admittedly did not complete the appeal process under the ARP because he did

6

not appeal to the office of General Counsel, nor did he allow time to do so before filing his original complaint.[5]

Plaintiff states, "At that time [June 8, 2020], [he] became dissatisfied with the [ARP]," so he decided to pursue judicial remedies instead. Am. Compl. at 32. Being dissatisfied with a prison's grievance procedure does not entitle a prisoner to bypass those procedures. Indeed, under the ARP, as with most grievance procedures, an inmate's dissatisfaction with a response at one level is an anticipated reaction that drives the multi-tiered approach to prisoner complaints. See, e.g., 28 C.F.R. § 542.15(a) ("An inmate who is not satisfied with the Warden's response … [or] the Regional Director's response may submit an Appeal . . . ."). See also Farinas v. Kane, No. CV 319-008, 2019 WL 1104187, at *2 (S.D. Ga. Feb. 8, 2019), report and recommendation adopted, No. CV 319-008, 2019 WL 1102214 (S.D. Ga. Mar. 8, 2019) ("Federal regulations provide the procedure for federal inmates to exhaust administrative remedies, including submission of grievances and appeals by prisoners who are dissatisfied with a response to a grievance.").

---

[5] Even if Plaintiff filed an appeal with the office of General Counsel after he filed his original complaint, under the PLRA, he would not have properly exhausted his claims. See 42 U.S.C. § 1997e(a). See also Pavao, 679 F. App'x at 825 (declining to consider the prisoner's post-complaint exhaustion efforts because "efforts to exhaust after filing [a] complaint are not relevant" under the PLRA).

7

Additionally, the absence of a response at any level does not constitute "de facto exhaustion." See Am. Compl. at 33. On the contrary, the ARP explicitly provides, "[a prisoner] may consider the absence of a response [at any level of the process] to be a denial." 28 C.F.R. § 542.18. See also Pavao, 679 F. App'x at 825-26 (holding the prisoner failed to demonstrate "unavailability" of the grievance procedure simply because he did not receive a response at one level given the administrative procedures provide that, under such a circumstance, a prisoner may proceed to the next step of the process). Finally, a prisoner's subjective belief that the grievance process cannot adequately address his claims does not operate as a waiver of the exhaustion requirement. See Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile.").

On the face of his amended complaint, it is apparent Plaintiff did not exhaust his administrative remedies in compliance with the ARP before initiating his federal claim in this Court. See Woodford, 548 U.S. at 90. Because exhaustion is mandatory, Plaintiff's failure to exhaust his remedies is fatal to his claim. See Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."); Woodford, 548 U.S. at

8

85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Thus, the Court will dismiss Plaintiff's case without prejudice subject to his right to refile his claims after properly exhausting them.

Accordingly, it is

**ORDERED:**

1. This case is **DISMISSED without prejudice**.

2. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of June 2020.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c: David Aaron Jacobs